## LIMITATIONS AS TO TIME WITHIN WHICH SUIT MAY BE BROUGHT.

Common Pleas Court of Hamilton County.

ELIAS R. MONFORT ET AL V. LILLIE I. ELLIS ET AL.

Decided, December, 1913.

*Sureties—Action on Bond of a Defaulting Contractor—Party Undertaking to Complete the Work Not an Agent of the Surety—Limitation as to Time for Bringing Suit on Bond—Judgment Non Obstante Veredicto—Ruling on Interlocutory Order Not Binding at Hearing on the Merits.*

1. The limitation of time within which suit may be brought on the bond of a defaulting contractor is waived by the surety when it consents that another may step into the place of the contractor and complete the work.
2. Where a second default occurs as to which there was no waiver, and suit is not brought on the bond within the time stipulated therein, the limitation becomes effective and an action begun thereafter can not be maintained.
3. Where a court becomes satisfied on motion for a new trial that error was committed in not arresting the case from the jury at the close of the plaintiff's testimony and giving judgment for the defendant, the verdict may be set aside and judgment entered by the court *sua sponte* for the defendant.
4. A judge hearing a case on its merits is not bound by a previous ruling in an interlocutory order in the same case, where to follow such ruling would perpetuate error and work an injustice.

*Thomas L. Pogue* and *John V. Campbell*, Prosecuting Attorneys, and *William R. Collins,* for plaintiffs.

*Gordon, Morrill & Ginter* and *Dolle, Taylor & O'Donnell,* contra.

GORMAN, J.

This action was commenced on March 21, 1908, by the trustees of the memorial association of Hamilton county and the county commissioners of Hamilton county, to recover a judgment for $33,452.30 against Lillie I. Ellis, William H. Ellis & Com-

pany, the Bankers Surety Company, a corporation under the laws of Ohio, and James M. Sprague, receiver for W. H. Ellis & Company. Since the commencement of the action Lillie I. Ellis has been dismissed as a party defendant upon the application of plaintiffs, and plaintiffs, during the trial of the case, disclaimed any purpose to recover a verdict or judgment against James M. Sprague, receiver for W. H. Ellis & Company.

There have been in this case a petition, an amended petition, an amendment to the amended petition, and a second amended petition. There were also several answers and amended answers filed by the parties to the suit.

The case was heard and determined by the court and a jury upon the second amended petition filed herein February 12, 1913, the answer thereto of the Bankers Surety Company filed July 17, 1913, and the reply of the plaintiff to said answer filed October 2, 1913.

Previous to the trial before the court and jury, there were several interlocutory motions and demurrers disposed of, one of which, a demurrer to the second and third defenses of the answer and amended answer of the Bankers Surety Company, decided July 3, 1911, by Honorable Wade Cushing, one of the judges of this court, will be noted later in this opinion.

This case came on to be tried before this individual member of the court on October 15, 1913, upon the pleadings above referred to.

The second amended petition counts upon a recovery of damages upon a bond against the defendants, William H. Ellis & Company and the Bankers Surety Company, for the breach of a contract entered into by W. H. Ellis & Company with the trustees of the memorial association of Hamilton county, Ohio, for the erection of a memorial building at the northwest corner of Elm and Grant streets, in the city of Cincinnati.

From the pleadings, the evidence and the admitted facts in the case, it appears that on the 4th day of March, 1905, W. H. Ellis & Company entered into a contract in writing with the said association, which was organized under the laws of the state of Ohio, to build the memorial building aforesaid,

for $144,561. For the faithful performance of the contract W. H. Ellis & Company gave an undertaking with the Bankers Surety Company as surety, conditioned for the faithful performance of said contract, in the sum of $73,000, which contract was referred to and made a part of said bond. On the 13th of May, 1905, the firm of W. H. Ellis & Company the partnership which entered into said contract, went into the hands of a receiver, duly appointed by the Court of Common Pleas of Hamilton County, and thereupon the said W. H. Ellis & Company defaulted, failed and neglected to prosecute the work or complete the contract of erecting said building. Between the 13th of May, 1905, and the 18th of July, 1905, various negotiations were had between the plaintiff association, W. H. Ellis & Company, Lillie I. Ellis, the wife of W. H. Ellis; and the Bankers Surety Company. The contract provided, among other things, Article V, that should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any agreement therein contained, such refusal, neglect or failure being certified by the architects, Hannaford & Sons, the owners shall be at liberty after five days written notice to the contractors, to provide any such labor or materials and to deduct the cost thereof from any money then due or thereafter to become due to the contractors under the contract; and further, if the architects shall certify that such refusal, neglect or failure is sufficient ground for such action, the owners shall be at liberty to terminate the employment of the contractors for the said work and to enter upon the premises and take possession, for the purpose of completing the work included under the contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work and to provide the materials therefor, and to charge the cost of completing the work to the contractors. It was further provided in the contract that estimates of the work should be made from time to time by the architects and payments made upon the certificate of the archi-

tects. The bond of the Bankers Surety Company, among other things, provided that if the principal shall fail to comply with the conditions of said contract to such an extent that the same shall be forfeited, then said surety shall have the right and privilege to assume said contract and to sublet or complete the same, whichever said surety may elect to do, provided it is done in accordance with said contract, and further said bond provided that any suits at law or proceedings in equity, brought against this bond, to recover any claim thereunder, must be instituted within six months after the first breach of said contract, and that the said surety shall not be liable for a greater sum than the penalty thereof, that is, $73,000. These are the material parts of the contract and bond which are necessary to refer to and keep in mind for the determination of this motion.

The record further discloses that as soon as W. H. Ellis & Company passed into the hands of a receiver, to-wit, on or about the 13th of May, 1905, the plaintiff association notified the Bankers Surety Company in writing that the firm of W. H. Ellis & Company had been placed in the hands of a receiver and that the board of trustees would hold the Bankers Surety Company responsible for the failure of W. H. Ellis & Company to complete the work in accordance with the terms of the contract. This notice was duly received by the Bankers Surety Company. On June 15, 1905, as appears from the minutes of the plaintiff association, James M. Sprague, the representative of the Bankers Surety Company and also receiver for Ellis & Company, appeared before the trustees of the memorial association, upon their request, and stated that the bonding company which he represented were not contractors and declined to assume the completion of the contract, but desired that the board should assume the contract under the direction of Mr. Kennedy, who was a partner of W. H. Ellis. This was a month after W. H. Ellis & Company had defaulted on the contract. There was also present Mr. Louis Dolle, as attorney for W. H. Ellis & Company, who made a statement on behalf of that company. No action was taken at this meeting by the

memorial association. On June 20, 1905, the association held another meeting at which Mr. Dolle presented a proposition on behalf of W. H. Ellis & Company, through W. H. Ellis, in substance offering to do the work through Harry E. Kennedy, who should be in active charge of the work and complete the building. It is unnecessary to set out at length the details of this proposal. On the 24th of June, 1905, the trustees met and rejected the proposition made by W. H. Ellis. Matters remained in this condition until about the 15th of July, 1905, when there was presented to the association at a session held by it the following letter from Lillie I. Ellis, dated July 11, 1905, and addressed to the memorial association:

"Having indemnified the Bankers Surety Company of Cleveland, Ohio, who is surety upon the bond of W. H. Ellis & Company, with whom you entered into a contract, under date of March 4th, for the construction of the memorial building at Grant and Elm streets, Cincinnati, Ohio, I respectfully request in view of the fact that the firm is unable to complete its contract by reason of the proceedings pending between the members for a dissolution of the co-partnership, and I being ultimately liable for damages which may be sustained by the failure of the firm to complete their said contract, that I be granted permission to complete such contract in accordance with the plans and specifications forming part of the agreement which you entered into with said firm, and herewith hand the consent of the Bankers Surety Company to my undertaking such work.

"Yours very respectfully,
"LILLIE I. ELLIS."

At the same meeting there was also presented to the plaintiff association a letter from the Bankers Surety Company, in connection with the above letter of Lillie I. Ellis, which letter is as follows:

"We have advised Mrs. Lillie I. Ellis of the demand made upon us as surety for the completion of the memorial building, which W. H. Ellis & Company agreed to construct under contract which you entered into with them.

"We agree to Mrs. Lillie I. Ellis completing the building in accordance with her request, and agree that all bills for ma-

terial and labor, approved by her or W. H. Ellis, or Harry E. Kennedy, or the architect, shall be evidence of the amounts expended for such purpose, and shall be included in the cost of completion of such structure and when so approved, shall be binding upon us as surety under such contract, it being distinctly understood that our liability as surety for such contract is not changed, but shall remain as originally fixed by bond given, on which we are surety, for the faithful performance of the contract of said W. H. Ellis & Co.

"Yours very respectfully,

"W. A. MACBETH,

"2nd Vice-President, the Bankers Surety Company."

On July 18, 1905, the association met and had these two letters, the one from Lillie I. Ellis and the other from the Bankers Surety Company, before them. Whereupon the association passed the following resolution:

"WHEREAS, on the 4th day of March, 1905, W. H. Ellis & Company entered into a contract with this board for the construction of the memorial building, in accordance with the plans and specifications thereto and a part thereof, at Grant and Elm streets, Cincinnati, Ohio, and gave the bond of the Bankers Surety Company of Cleveland, Ohio, as surety to this board for the performance thereof, subsequently an action was commenced in the Common Pleas Court of Hamilton County, Ohio, known as No. 131,469, against W. H. Ellis and others, wherein James M. Sprague was appointed receiver, etc., and said firm of W. H. Ellis & Co. now declare their inability to proceed with the erection of said structure, and the Bankers Surety Company decline to perform the said contract, and the said W. H. Ellis & Co. requesting that Lillie I. Ellis be permitted to finish said building, and this board being now advised that Lillie I. Ellis is willing to finish said building in performance of the contract, plans and specifications, and desires to subrogate herself to the rights of said W. H. Ellis & Co., in the completing of the memorial building, and the said Bankers Surety Company of Cleveland, Ohio, having filed with this board its written consent to Lillie I. Ellis completing the building in accordance with her request, Therefore,

"Resolved, That Lillie I. Ellis, be and hereby is granted permission to complete the said memorial building in accordance with the contract, plans and specifications as entered into by the

said W. H. Ellis & Co., and that she is permitted to proceed, perform and fulfill the said contract, plans and specifications in as complete manner as the same were to be performed by the said W. H. Ellis & Co.

"*Resolved,* That all material, equipment, etc., belonging to the said W. H. Ellis & Co., now on the ground, may be taken possession of, without liability on the part of this board, by the said Lillie I. Ellis and her agents in furtherance of the performance of the said contract."

The resolution was unanimously adopted. Thereupon the work of completing the building proceeded and the moneys in the county treasury available for the erection of the building were paid out to Lillie I. Ellis upon the certificate of the architects, Hannaford & Sons, and upon the approval of the association. No moneys thereafter were paid either to W. H. Ellis & Company or the Bankers Surety Company, nor were any vouchers or warrants drawn in favor of either of said parties. The vouchers, under a rule adopted by the association, were required to be endorsed by the architect and by W. H. Ellis and probably Lillie I. Ellis. W. H. Ellis, the husband of Lillie I. Ellis, superintended the work after July 18, 1905. The work of completing the building progressed from the above date until about the 10th day of April, 1907, at which time there was a cessation of work upon the building, and Lillie I. Ellis defaulted in the performance of the contract. The minutes of the plaintiff association show that on that date, April 10, 1907, the architect reported that the contractor was absent from the city and that no effort was being made to continue the work; that he learned that the men on the work had not been paid, and that they were about to quit work on the building. The association, upon receiving this word, directed the architects to take charge of the building upon the workmen of the contractor retiring, and to place watchmen in the same to protect the premises from injury. On April 17, 1907, the trustees of the association received the following communication from Hannaford & Sons, the architects:

"*Gentlemen:* Whereas, Wm. H. Ellis & Co., and Lillie I. Ellis, or either of them, have refused and neglected to supply a

sufficiency of proper and skilled workmen and of materials of the proper quality, and have failed to prosecute the work with promptness and diligence, we hereby certify that such refusal, neglect and failure is sufficient ground for the termination of the employment of said Wm. H. Ellis & Co. and Lillie I. Ellis or either of them as contractors for the work of the Hamilton county memorial building.

"Respectfully,<br>"SAMUEL HANNAFORD & SONS."

This certificate or communication was received and filed and the following resolution was presented and adopted by the unanimous vote of all the trustees present:

"WHEREAS, On the 6th day of April, 1907, the architect employed by this board, certified that the contractors have refused and neglected to supply a sufficiency of properly skilled workmen, and of materials of the proper quality and have failed to prosecute the work with promptness and diligence, and have failed in performing the contract, and

"WHEREAS, This board by resolution directed that five days written notice be given the contractor to advise this board whether or not he proposed to complete said contract, and said board holding that his failure to proceed with due diligence shall be deemed satisfactory ground to terminate the contract and to enter upon and take possession of the premises for the purpose of completing the work included in said contract, and

"WHEREAS, The secretary of this board has given five days written notice to the contractor as provided in said resolution, to advise this board of his intention and ability to complete said contract according to its terms, and the architects employed by this board, now certify that Wm. H. Ellis & Co. and Lillie I. Ellis have refused and neglected to supply a sufficiency of properly skilled workmen and materials of the proper quality, and have failed to prosecute the work with promptness and diligence, and certifies that such refusal, neglect and failure is sufficient ground for the termination of the employment of Wm. H. Ellis & Co. and Lillie I. Ellis as contractors for the work of erecting memorial building; therefore be it

"Resolved, That the failure of the contractor to advise this board whether or not he proposes to complete said contract, and his failure to proceed with due diligence, and his refusal and neglect to supply a sufficiency of properly skilled workmen and of materials of the proper quality, and his failure to prosecute

the work with promptness and diligence is by this board deemed to be sufficient reason for their termination of the contract and the discharge of the contractor; and be it further

"*Resolved*, That the employment of the contractors of said contract, be and is now terminated and that this board enter upon the premises and take possession, and the architects are directed to prepare plans and specifications of the unfinished portion or portions of said work, and the same to be awarded after advertisement in the manner provided by law."

There was also the following resolution adopted at said meeting:

"WHEREAS, This board having terminated the contract with the contractors, heretofore employed by this board, and have instructed the architects employed by this board to prepare plans and specifications for the unfinished portion or portions of the contract for the erection of the Hamilton county memorial building, therefore, be it

"*Resolved*, That the clerk of this board be and is hereby directed to advertise for bids for the completion of said Hamilton county memorial building, in conformity with the statute in such cases made and provided."

Thereupon the trustees of the association had new plans and specifications prepared for the incompleted work of the building through the architects, Hannaford & Sons, advertised for bids for the work and proceeded to do the work of completing the building. The final cost of completing the building, including the sums paid out to W. H. Ellis & Company, Lillie I. Ellis, and the contractors employed by the association after the default of Lillie I. Ellis on April 10, 1907, amounted to $30,854.56 over and above the contract price. There was also incurred an additional expense for the architects in preparing new plans and specifications, advertising and other sums, bringing the total cost to the memorial association of the completion of the building, over and above the contract price, to $32,992.54. There was also paid out upon the orders of the memorial association $347.55 on account of claims for labor and materials. But the court was of the opinion that inasmuch as no liens had ever been perfected for these claims the memorial association

was not legally justified in paying out the same and therefore disallowed this sum as an item of damage against the defendants.

Upon the completion of the building it was found that the contract price had been exhausted and in addition thereto the amount above stated had been expended in the completion of the work.

This action is to recover the amount which the county of Hamilton and the memorial association trustees were required to expend over and above the contract price in the completion of this building.

At the close of plaintiffs' testimony upon the trial of the case, the Bankers Surety Company moved the court to instruct the jury to return a verdict in its favor, which motion the court overruled, to all of which counsel for the Bankers Surety Company duly excepted.

Neither the defendant, W. H. Ellis & Company, nor the Bankers Surety Company offered any evidence to meet the evidence offered by the plaintiffs, and the case having rested upon the testimony of the plaintiffs, the court instructed the jury to return a verdict in favor of the plaintiffs for the amount shown by the evidence to have been expended over and above the contract price, with interest thereon from the date claimed in the second amended petition, to-wit, November 1, 1907, which appears to have been the date of the completion of the building, up to the 6th day of October, 1913, the first day of the October term. Under these instructions of the court the jury retired and returned a verdict in favor of the plaintiffs and against the defendants, William H. Ellis and H. E. Kennedy, doing business as W. H. Ellis & Company, and the Bankers Surety Company, in the sum of $44,729.66, which is the correct amount the plaintiffs would be entitled to recover, including interest, if the defendants or either of them are liable upon the contract and the bond.

Within three days of the rendition of the verdict a motion for a new trial was interposed by the Bankers Surety Company, setting out various grounds, and also an amended motion by the same company that the court vacate and set aside the ver-

dict and enter a final judgment in its favor, or grant a new trial, as the court may determine, for the various reasons set out in the motion.

As to W. H. Ellis & Company the court is of the opinion that under the pleadings and the evidence the plaintiffs are entitled to recover the amount returned by the jury and there being no motion on behalf of that company for a new trial, the verdict will stand as to that company.

Now, as to the Bankers Surety Company, the question is, whether or not a verdict should have been rendered against it.

This company being surety for the faithful performance of the contract entered into by W. H. Ellis & Company would be liable to the plaintiffs for any damages that resulted from a default on the part of W. H. Ellis & Company, or a failure upon its part to perform its contract in accordance with the terms thereof and in accordance with the plans and specifications. W. H. Ellis & Company did default and failed to perform its contract on or about May 9, 1905, when a receiver was appointed for the firm. Upon this default the Bankers Surety Company had the right under the bond to step into the shoes of W. H. Ellis & Company and complete the erection of the building in accordance with the terms of the contract by virtue of that provision in the bond which provided that if the principal shall fail to comply with the conditions of said contract to such an extent that the same shall be forfeited, then said surety shall have the right and privilege to assume said contract and sublet or complete the same whichever said surety may elect to do, provided it is done in accordance with the said contract. The trustees of the memorial association evidently understood that the Bankers Surety Company had the right to do this under the terms of the bond, because they notified the Bankers Surety Company immediately on learning of the default of W. H. Ellis & Company, on May 16, 1905.

The Bankers Surety Company failed, neglected and refused to complete the contract or to sublet the same and so notified the trustees of the memorial association, as appears from their minutes. When Mr. Sprague, who was the manager and rep-

resentative of the Bankers Surety Company, appeared before the memorial association in their session, on June 15, 1905, and stated that he was there representing the bonding company and also as receiver of Ellis & Company, and further stated that the bonding company were not contractors and declined to assume the completion of the contract but desired that the board should assume the contract under the direction of Mr. Kennedy, this, the court believes, was a distinct notice to the memorial association that the Bankers Surety Company would not complete the building under the terms of the bond. On July 18, 1905, a resolution was passed by the memorial association, and in this resolution the trustees set out, among other things, that

"The said firm of W. H. Ellis & Co. now declare their inability to proceed with the erection of said structure, and the Bankers Surety Company decline to perform the said contract, and the said W. H. Ellis & Co. requesting that Lillie I. Ellis be permitted to finish said building, and this board being now advised that Lillie I. Ellis is willing to finish said building in performance of the contract, plans and specifications, and desires to subrogate herself to the rights of said W. H. Ellis & Co., in the completing of the memorial building, and the said Bankers Surety Company of Cleveland, Ohio, having filed with this board its written consent to Lillie I. Ellis completing the building in accordance with her request, therefore

"*Resolved,* That Lillie I. Ellis be and hereby is granted permission to complete the said memorial building in accordance with the contract, plans and specifications as entered into by the said W. H. Ellis & Co., and that she is permitted to proceed, perform and fulfill the said contract, plans and specifications in as complete manner as the same were to be performed by the said W. H. Ellis & Company."

In the opinion of the court there is no conclusion which can be reached with reference to this matter other than that the memorial association agreed to a substitution of Lillie I. Ellis for W. H. Ellis & Company in the contract for the erection of this building, and to the extent of this substitution of Lillie I. Ellis for W. H. Ellis & Company there was a modification of this contract. All the terms and conditions of the contract were to remain in force and binding upon Lillie I. Ellis, and the Bankers

Surety Company having consented in writing that Lillie I. Ellis should be substituted for W. H. Ellis & Company to complete the building and that its liability should continue the same for Lillie I. Ellis as for W. H. Ellis & Company, it became thereby bound for the faithful performance of this contract by Lillie I. Ellis to the same extent and in the same manner as it was bound for the performance thereof by W. H. Ellis & Company.

This conclusion of the court is supported by the conduct of the parties after Lillie I. Ellis began the work, July 18, 1905. The vouchers were all made out to Lillie I. Ellis and not to W. H. Ellis & Company, or to the Bankers Surety Company. The Bankers Surety Company retained no supervision over the work. The architects of the plaintiffs required the endorsement upon the vouchers, warrants and bills, of Lillie I. Ellis and W. H. Ellis, but not of the Bankers Surety Company. The architects in their report to the plaintiff association, recognize Lillie I. Ellis as the contractor and that W. H. Ellis was acting on her behalf. The minutes of the association and the reports of the architects will show this to have been done. Upon the default of Lillie I. Ellis, April, 1907, the Bankers Surety Company was notified and Mr. Thorndyke appeared on behalf of the company but the record fails to disclose that the Bankers Surety Company was asked to assume the completion of the work and fails to show any request on the part of the Bankers Surety Company to assume the completion of the work.

I can come to no other conclusion than that this work of completing this building was done by Lillie I. Ellis, either on her own behalf or on behalf of W. H. Ellis & Company, and not on behalf of the Bankers Surety Company. I have given the question as much thought and consideration as the limited time in which I should decide this motion will permit.

How then stands the case?

The default of W. H. Ellis & Company was waived by the Bankers Surety Company when it consented that Lillie I. Ellis should go forward and complete the work and that it would be bound for the faithful performance by her to the same extent and as fully as it was bound to W. H. Ellis & Company.

Therefore, the Bankers Surety Company can not avail itself of the default of W. H. Ellis & Company, nor can it claim that an action should have been brought within six months from the date of that default, but the second default, the default of Lillie I. Ellis, on or about April 10, 1907, is one for which the Bankers Surety Company, as surety, would· be liable, and, unless the plaintiffs have been guilty of failure to prosecute this suit within the time specified in the bond, the Bankers Surety Company must respond in damages for the loss occasioned by the default of Lillie I. Ellis.

Now, the bond provides that suit must be brought within six months from the first default, but the first default having been waived, the court is of the opinion that the action need not have been brought until within six months from the date of the second default, on or about April 10, 1907. As a matter of fact, suit was brought on March 21, 1908, more than eleven months after the default of Lillie I. Ellis, and more than six months after the memorial trustees had taken possession of the building, prepared new plans and specifications for the completion thereof, advertised for bids and ordered the contract for the completion of the work.

The action, therefore, was not brought by the plaintiffs within the six months period of limitation provided in the bond.

Was there a waiver of this limitation by the defendant, the Bankers Surety Company?

No waiver is pleaded by the plaintiffs, nor is there any evidence tending to show that the Bankers Surety Company waived its rights under the bond to require the plaintiffs to bring their action within the six months period. The fact that the Bankers Surety Company waived the default of W. H. Ellis & Company would not establish a waiver as to the default of Lillie I. Ellis, April 10, 1907.

Is the six months limitation within which suit must be brought in order to recover under the bond a reasonable limitation?

In the case of *Appel* v. *Insurance Company,* 76 Ohio State, 52, the Supreme Court held in the first paragraph of the syllabus:

"The parties to a contract of insurance may, by a provision inserted in the policy, lawfully limit the time within which suit may be brought thereon, provided the period of limitation fixed be not unreasonable."

And in the second paragraph of the syllabus the court stated:

"A provision in a policy of fire insurance that 'no suit or action on this policy, for the recovery of any claim, shall be. sustainable in any court of law or equity. * * * unless commenced within six months next after the fire,' is unambiguous and in a. suit on the policy commenced more than six months after the date of the fire, will be enforced in accordance with the plain meaning of its terms, where no extrinsic facts are alleged excusing delay in bringing the suit.

Now it has been held repeatedly that surety companies which. for a specified premium, undertake to indemnify for damages arising from the failure to perform a contract or the breach of a· duty of an officer are in the same class as insurance companies, and this contract of suretyship, as the court views it, is in the nature of an insurance, and the rule laid down in the case just cited we think applies with full force and effect to the case at bar.

The rule laid down in the case just cited has been adopted in numerous other cases, a few of which are as follows: *Ins. Co.* v. *West,* 6 Ohio State, 599; *Ins. Co.* v. *McGookey,* 33 Ohio State, 555; *Stone Co.* v. *Drach Construction Co.,* 123 Fed., 746; *Lesher* v. *U. S. F. & G. Co.,* 239 Ill., 502.

Many other cases might be cited, but these, we think, are sufficient to establish the rule that a limitation of the character and kind contained in the bond of this surety company involved in this case is neither unreasonable as to time nor ambiguous in its character. Indeed, counsel for plaintiffs were frank enough to admit in the argument of the case and in their briefs that the limitation contained in this bond is one upon which the defendant, the Bankers Surety Company, has a right to stand.

It is contended, however, by counsel for plaintiffs that Lillie I. Ellis, in the completion of this building, was acting as the agent of the Bankers Surety Company and in its behalf and that

the Bankers Surety Company selected her as its agent and designated her to proceed with the completion of this building in accordance with its privilege under the bond above referred it.

The court is unable to concur with the plaintiffs' counsel in this claim. As heretofore stated, it does not appear from the proceedings of the trustees or the evidence in this case that the Bankers Surety Company ever intended or proposed to complete this building after the default of W. H. Ellis & Company, nor does it appear that the trustees of the memorial association understood or considered that the Bankers Surety Company was doing this work through Lillie I. Ellis. In fact, the communication of the Bankers Surety Company, made orally by Mr. Sprague and in his letter to the memorial association, indicate and state that it does not intend to proceed with the work, but was content to continue as surety for the performance of the work by Lillie I. Ellis.

It is further contended by counsel for plaintiffs that the act creating the memorial trustees, passed by the Legislature of Ohio, Section 8, precluded the trustees from making any contract for the erection of this building except in writing, and that any modification or alteration of the contract when once entered into must be made in writing.

There is no doubt of the correctness of the contention of counsel for plaintiffs in this regard. The trustees were governed by the law which brought them into existence and controlled and directed their movements and their conduct and directed the manner in which the contract should be made. All their contracts were to be made in writing, concurred in by a majority of the board of trustees after an advertisement in two newspapers published and of general circulation in the county; the contract was to be let to the lowest and best bidder; and when necessary in the opinion of the trustees, in the prosecution of such work, to make modifications or alterations in any contract, such alterations or modifications could only be made by order of the board, agreed upon in writing and signed by the contractor and the chairman and secretary of said board. But the thing that was done in the case at bar, under the law, by these trus-

tees and by the parties, the Bankers Surety Company, Lillie I.
Ellis and W. H. Ellis & Company, was done in writing.  There
was a proposal in writing by Lillie I. Ellis, the written consent
thereto by the Bankers Surety Company, and a written resolu-
tion of the trustees of the memorial association to a modification
of the contract with W. H. Ellis & Company—a substitution of
Lillie I. Ellis for W. H. Ellis & Company.

The court having reached this conclusion that the Bankers
Surety Company did not waive its right to stand upon the six
months limitation in the bond and the suit, not having been
brought within the time therein limited, the plaintiffs had no
right to recover against the Bankers Surety Company, this
court erred in overruling the motion of the Bankers Surety
Company to arrest the case from the jury and instruct a ver-
dict for the Bankers Surety Company.  It also erred in in-
structing the jury to return a verdict against the Bankers
Surety Company for the full amount.

The court is of the opinion that the motion for a new trial
in this case on behalf of the Bankers Surety Company is well
taken, and there being no question of fact under the evidence
in this case for the jury to pass upon, the court is of the opin-
ion that he should now do what he should have done at the con-
clusion of the plaintiffs' testimony, arrest the case from the jury
and instruct a judgment in favor of the Bankers Surety Com-
pany for its costs.  The court is of the opinion that this may
be done under the authority of *Archdeacon, Admr.,* v. *Cincin-
nati Gas & Electric Company,* 80 Ohio State, 27, wherein the
court, in the third paragraph of the syllabus, says:

"Though issues joined in a case are triable to a jury, when
the facts are conclusively determined in a manner not affected
by material error, the application of the law to such facts is
a function of the court and its exercise, when properly invoked,
becomes a duty."

In that case the Supreme Court itself, after a verdict had
been rendered in favor of the plaintiff and affirmed by the
general term of the Superior Court of Cincinnati, reversed both

the special and general terms and entered a final judgment for the plaintiff in error, the defendant below.

If this may be done by the reviewing court, what reason may be urged why the same action may not be taken by the trial court?

On page 39 of the above cited case Judge Shauck, in passing upon this question, says:

"It is subversive of the public interests and promotive of no right of either party to continue a contest before a jury when nothing is involved but the application of the law to a state of facts conclusively established."

In this case there appears to be nothing involved except the application of the law to a state of facts shown conclusively by the evidence and the admissions of the parties.

This court, in the case of *Sellew* v. *Vine Street Congregational Church,* entered a judgment in favor of the defendant after a verdict in favor of the plaintiff had been rendered, and this judgment was affirmed by the circuit court upon error.

The same course was taken by Judge Hoffheimer, in the Superior Court of Cincinnati, in the case of *Kidd* v. *Traction Company,* in which a verdict was rendered in favor of the plaintiff and upon a motion for a judgment in favor of the defendant the court granted the same, and the ruling was sustained by the circuit court.

This is not a motion for a judgment on the pleadings and therefore the case cited by counsel for the plaintiffs, 85 Ohio State, 175, does not apply, but, the court is of the opinion that in the case at bar, if a motion for a judgment on the pleadings had been made, it would have been the duty of this court to grant the same, for the following reasons:

The answer of the defendant, the Bankers Surety Company, to the second amended petition of the plaintiffs, upon which this case was tried, sets up in its second defense the provision of the bond which provides that suit must be brought thereon to recover within six months after the breach of the contract. The reply to that answer fails to traverse these averments of the

second defense of the defendant, and, therefore, this defense stands, under the pleadings, undenied, and if the facts therein set out are true, as they appear to be by reference to the bond, the Bankers Surety Company was entitled, on the pleadings, to go out of court with its costs.

However that may be, the court is not willing to rest the decision upon the question of whether or not this is a case wherein the defendant, the Bankers Surety Company, is entitled to a judgment on the pleadings inasmuch as that motion is not made in this case.

The court has been somewhat embarrassed by the decision of my associate, Judge Cushing, in passing upon a demurrer to an answer to a former petition in this case. Judge Cushing's decision will be found in 11 Nisi Prius (N.S.), 625. Among other things, he found from the pleadings that the Bankers Surety Company had designated Lillie I. Ellis as its agent to complete the work; that the owners, the memorial association, had consented thereto, and that by reason thereof the Bankers Surety Company would be liable, and that the six months limitation would not apply.

There can be no question about the correctness of this conclusion if Lillie I. Ellis was acting on behalf of the Bankers Surety Company, but, as this individual member of the court has found from the evidence and all the evidence in the case that she was not acting on behalf of the Bankers Surety Company but was acting on her own behalf to protect herself, because she had indemnified the Bankers Surety Company before it became surety for W. H. Ellis & Company, it appears to me that the conclusion which I have come to is not inconsistent with Judge Cushing's opinion. Judge Cushing was looking at the pleadings alone and there was an allegation in the petition and the amended petition of the plaintiffs that Lillie I. Ellis and the Bankers Surety Company assumed the performance of said contract and that the defendant, Lillie I. Ellis, with the full knowledge and consent and participation of the defendant the Bankers Surety Company, began the performance of said contract.

As I have stated, the evidence in this case does not disclose that Lillie I. Ellis began this work, or requested to begin the work, on behalf of the Bankers Surety Company, but on her own behalf and for her own protection, and that the plaintiff association consented that she be substituted for W. H. Ellis & Company in the completion of the contract.

But even if my conclusion might be at variance with that of Judge Cushing, nevertheless his ruling was on an interlocutory order, not upon final hearing, and neither he nor any other member of this court would or ought to be bound by a decision upon an interlocutory order when the case comes to be finally determined upon its merits and a final judgment entered.

In order that an error might not be perpetrated or that an injustice might not be done, I conceive it would be the duty of this court or any individual member thereof, upon final hearing of a case and the entering of final judgment, to enter such judgment as the law and evidence of the case warrant regardless of any findings or entries that might have been made on an interlocutory motion or demurrer.

The judgment of the court is that the verdict as to the Bankers Surety Company be set aside, and the court, upon its own motion, now renders judgment in favor of defendant, the Bankers Surety Company, that it go hence without day and recover its costs herein expended, and this judgment the court should have rendered upon the motion of the attorneys for the Bankers Surety Company at the conclusion of the plaintiffs' testimony.

Let an entry be drawn in accordance with this finding.